UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES I. WYNN, SR.,

                                    Plaintiff,                          22-CV-6353 (CJS)

vs

GERDA B. CASSARA, HOUSING
ADVOCACY SERVICE, INC.,
MARK GREISBERGER, PROVIDENCE
HOUSING DEVELOPMENT CORP.,
ABAR ABSTRACT, SUSAN J. MICHEL
ESQ., ROCHESTER GAS and
ELECTRIC,
                                    Defendants.

_____


## INTRODUCTION

On August 22, 2022, James I. Wynn, Sr. ("Plaintiff"), proceeding *pro se*, filed four lawsuits, including the subject action, and paid the filing fee.  The four actions were: 22-CV-6352 CJS, *Wynn v. Larimer*, et al.; 22-CV-6353 CJS, *Wynn v. Cassara, et al.*; 22-CV-6354 CJS, *Wynn v. Cassara, et al.*; and 22-CV-6355, *Wynn v. Larimer, et al.*[1]  All four actions allege that Plaintiff was cheated out of piece of real estate by a large group of racist conspirators. [2]  This Court has already dismissed two of the aforementioned four actions, 22-CV-6352 CJS, *Wynn v. Larimer* and 22-CV-6355 CJS *Wynn v Larimer*, for failure to state a claim.  Additionally, by Decision and Order filed contemporaneously herewith, the Court is dismissing case number 22-CV-6354 CJS, also for failure to state a claim.  Now before the Court are two motions to dismiss the instant

_____

[1] A few days after that, Plaintiff filed a fifth action, 22-CV-6362, *Wynn v. Warren et al.*
[2] In reality, however, Plaintiff lost the property through foreclosure after he failed to pay his property taxes and then failed to abide by a Chapter 13 Bankruptcy Plan. *See, generally, Wynn v. Phillips Lytle LLP, et al.*, 22-CV-6352 (CJS), Decision and Order dated February 22, 2023.

Complaint for failure to state a claim. (ECF Nos. 6 & 7).  For the reasons discussed below, one of those motions (ECF No. 6) is granted, the other (ECF No. 7) is denied as moot, Plaintiff's remaining claims are dismissed *sua sponte* as frivolous and vexatious, and Plaintiff is enjoined from filing further actions concerning this same subject matter without the Court's permission.

## BACKGROUND

The lawsuits filed by Plaintiff on August 22, 2022, all allege that Plaintiff was the victim of an "illegal foreclosure."[3]  The Complaint in this action (ECF No. 1) refers to an attached "Verified Complaint," but there is no such attachment.  However, Plaintiff filed a "Verified Complaint" in related action 22-CV-6355 CJS, ECF No. 1-1, which appears to be the attachment to which the Complaint refers.[4]  The gist of the pleading is that Plaintiff lost ownership of certain real estate through foreclosure following a failed attempt to avoid foreclosure through bankruptcy, and that Plaintiff blames the events leading to the foreclosure sale on a racist conspiracy involving lenders, attorneys, state and federal judges, the Chapter 13 Trustee, the foreclosure referee, the purchaser at the foreclosure sale, the Mayor of Rochester, and the County Executive of Monroe County.

---

[3] Complaint at p. 1.  Plaintiff filed the action using a 7-page form complaint for filing civil actions in federal court. When asked to state the basis for federal jurisdiction, Plaintiff wrote: "Plaintiff and Defendant reside in Monroe County."  When asked to state the "nature of the suit," Plaintiff wrote: "Illegal foreclosure of property at 3840 Lave Ave. [illegible] order of foreclosure and sale had expired also Plaintiff was still under the protection of the Chapter 7 bankruptcy stay statutes.  Scam was also meant to force Plaintiff into bankruptcy to avoid summary order by the Court of Appeals for the Second Circuit mandate dated November 22, 2019.  This was racist + criminal."

[4] In ruling upon the subject motions to dismiss, the Court has considered the Complaint, the "Verified Complaint," and other documents of which the Court can take judicial notice, including Plaintiff's Bankruptcy Court records. *See, e.g., Chien v. Skystar Bio Pharm. Co.*, 623 F. Supp. 2d 255, 260 (D. Conn. 2009) ("[I]n ruling on a motion to dismiss, a court is not limited to the factual allegations of the complaint but may consider "documents attached to the complaint as exhibits or incorporated in it by reference, to matters of which judicial notice may be taken or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993). Therefore, in considering a *res judicata* defense, a court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the Court. *See, e.g., Ambase*, 326 F.3d at 72–73; *Hackett v. Storey*, 2003 WL 23100328, at *2 (D.Conn.2003)"), *aff'd*, 378 F. App'x 109 (2d Cir. 2010).

More specifically, this action primarily pertains to 3840 Lake Avenue in Rochester, New York,[5] which was formerly owned by Plaintiff, but was sold at a foreclosure sale on April 11, 2022.  In or about 2013, American Tax Funding, which had purchased $55,000.00 in tax liens on the property from Monroe County, commenced an action in New York State Supreme Court, Monroe County, to foreclose the liens.

Seeking to avoid the foreclosure, Plaintiff considered filing a Chapter 13 Bankruptcy action and retained an attorney, William Rieth ("Rieth"), for that purpose.  Alternatively, Plaintiff also considered taking out a loan to pay the debt, and mentioned to Rieth that he had applied for a loan from a particular lender.  However, Plaintiff was not granted the loan, and he suspects that Rieth persuaded the lender to deny the loan application.  In that regard, Plaintiff, who is black, speculates that Rieth was motivated by racial animus and a desire to obtain Plaintiff's property for himself.[6]

Nevertheless, Plaintiff continued to retain Rieth to file a Chapter 13 bankruptcy petition. However, according to the Complaint, Rieth "intentionally sabotaged [Plaintiff's] bankruptcy plan so [that he] would lose everything that [he] owned."  Meanwhile, Bankruptcy Court records indicate that Plaintiff's Chapter 13 bankruptcy failed because he did not comply with the court-ordered plan.  More specifically, for reasons that are unclear Plaintiff insisted that the Bankruptcy Court ought to allow him to sell the property free and clear of the existing liens.  In any event, Rieth withdrew from representing Plaintiff.  Plaintiff reportedly attempted to retain other attorneys

---

[5] This was a rental property, not Plaintiff's primary residence.
[6] Plaintiff's oft-repeated mantra throughout his submissions is, in sum and substance, that everything done to him is because he is "82 years old and an African American male." Verified Compl. at ¶ 1.  However, Plaintiff has not proffered a shred of evidence that Rieth actually influenced the lender, or that he was interested in obtaining Plaintiff's property.

to represent him in the bankruptcy matter, but was unable to do so, which he also attributes to a conspiracy against him.

The Honorable Paul Warren, U.S. Bankruptcy Judge, eventually converted Plaintiff's Chapter 13 to a Chapter 7 liquidation, due to Plaintiff's failure to comply with the Chapter 13 Plan. Notably, when doing so, Judge Warren pointed out, in a Decision and Order dated July 27, 2017, that Plaintiff's persistent allegations of a racist conspiracy against him, which are the same allegations asserted in this action, were "delusional" and "lacking a foundation rooted in reality":

> The Court has had numerous opportunities to assess Mr. Wynn's cognitive skills and his overall ability to understand the bankruptcy process. He has, since just days after filing this case, persisted in his claim that he is the target of a racially motivated conspiracy, designed to deprive him of his real estate. That view – which appears to the Court to be delusional—likely caused the withdrawal of two experienced attorneys who attempted to represent Mr. Wynn in this case. Both attorneys also noted that Mr. Wynn refused to take their legal advice. Even a cursory reading of Mr. Wynn's many submissions demonstrates that Mr. Wynn's beliefs are so firmly held, but lacking in a foundation rooted in reality, that it is highly unlikely he could ever change his focus and move this case forward.

ECF No. 23-9 at pp. 15-16. Plaintiff appealed aspects of the bankruptcy proceeding to the Honorable David Larimer, Senior U.S. District Judge, who affirmed Judge Warren's rulings. Plaintiff also filed numerous unsuccessful appeals to the United States Court of Appeals for the Second Circuit.

Eventually New York State Supreme Court, Monroe County, issued a Judgment of Foreclosure and Sale for 3840 Lake Avenue. In April 2022, the court-appointed foreclosure referee conducted the public sale, and Mark Updegraff ("Updegraff") purchased the property. Updegraff's business entity, Ward Redux, was represented by attorney Susan Michel ("Michel"), though Michel denies that she was involved in the purchase of 3840 Lake Avenue.

On August 22, 2022, Plaintiff filed the subject action proceeding *pro se*, suing a subset of the larger group of persons connected to the bankruptcy and foreclosure proceedings. More specifically, the named defendants are Michel, Gerda Cassara ("Cassara"), Housing Advocacy Service, Inc. ("Housing Advocacy Service"), Mark Greisberger ("Greisberger"), Providence Housing Development Corp. ("Providence"), Abar Abstract Corp. ("Abar"), and Rochester Gas and Electric ("RG&E").

The Complaint alleges that Michel was "attorney for Mark Updefraff [(aka Ward Redux LLC)]," who purchased 3840 Lake Avenue at the foreclosure sale; that Cassara is a former mortgage holder who "illegally foreclosed" on Plaintiff's property; that Housing Advocacy Service is "paying rent to illegal property owner"; that Greisberger is the Executive Director of Providence and is "paying rent [to] illegal owner"; that Abar "fil[ed] false documents for illegal property"; and that RG&E supplies gas and electric to the current owner of the property.

The Complaint baldly alleges a wide-ranging, racially-based conspiracy against Plaintiff, beginning with Rieth's alleged attempt to sabotage Plaintiff, and followed by Judges Warren and Larimer's alleged attempts during the bankruptcy proceedings "to cover up for the biased discriminating [by] William Rieth" and permit the foreclosure action to proceed.[7] The Complaint alleges that Plaintiff should have been allowed to sell the property and avoid the foreclosure, but Judges Warren and Larimer "refused to allow [him] to sell the properties because it would expose the racist thing that William Rieth had done." The Complaint further baldly asserts that the other Defendants were active participants in the conspiracy. The Complaint offers no facts whatsoever to support the naked assertion that the foreclosure resulted from a racist conspiracy.

---

[7] *See*, Plaintiff's Chapter 7 proceeding, *In re Wynn*, 13-20304, W.D.N.Y.

On October 18, 2022, Greisberger and Providence filed an Answer with Counterclaim, ECF No. 4. The counterclaim, titled "Frivolous Claim," asserts that Plaintiff's claims against Greisberger and Providence "lack any reasonable basis in law or fact" and have caused Greisberger and Providence to incur "substantial legal costs in defendant against Plaintiff's baseless complaint."

On October 20, 2022, Michel filed a motion (ECF No. 6) to dismiss the Complaint as "factually and legally frivolous." Michel further argues that the Court should impose a filing injunction on Plaintiff and award Michel legal fees incurred in defending "the instant frivolous litigation."

On November 8, 2022, Updegraff filed a motion (ECF No. 7) to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Updegraff contends that Plaintiff's claims allege civil rights violations under 42 U.S.C. § 1983,[8] and that Updegraff cannot be liable thereunder since he is a private citizen who never acted under color of state law. More generally, Updegraff contends that Plaintiff's factual assertions about the foreclosure being the result of a racist conspiracy are not only entirely speculative, but also frivolous and demonstrably false, since Plaintiff admittedly had failed to pay the property taxes on the subject parcel.[9]

---

[8] See, e.g., ECF No. 7-1 at p. 3 ("Plaintiff's claims appear to sound as claims made under the Due Process and Equal Protection Clauses of the Fourteenth Amendment in as much as Plaintiff is asserting that the was deprived of the Property without due process of law because of his race.") (The reader is advised that the page numbers assigned by the ECF case-filing system may not correspond to the page numbers in the original document).
[9] See, e.g., ECF No. 7-1 at p. 11 ("Plaintiff fails to assert any facts supporting his constitutional claims against Updegraff. Critically, aside from vague and conclusory statements, Plaintiff asserts that Updegraff deprived him of his civil rights, due process and Constitutional rights, when Updegraff purchased the Property at the Foreclosure Sale. Although Plaintiff alleges a form of conspiracy between Updegraff and the other defendants, he offers no evidence describing the details of such a conspiracy."); see also, id. at pp. 14-15 ("Here, Plaintiff's claims are devoid of any rational basis for belief, and are the product of Plaintiff's delusions and fantasy, leaving no reason to liberally construe and interpret Plaintiff's claims as valid claims against Updegraff. Therefore, the Complaint should be dismissed with prejudice.").

On December 2, 2022, Plaintiff filed an application that was docketed as a Motion for Miscellaneous Relief, ECF No. 22, requesting, among other things, a 60-day extension of time to retain counsel, and permission "to sue for legal fees for counsel and out of pocket expenses."

On December 16, 2022, the Court issued an order (ECF No. 25) granting Plaintiff's application for miscellaneous relief (ECF No. 22) in part, by directing that Plaintiff could have until February 13, 2023, to respond to the pending motions to dismiss.  However, Plaintiff never responded to Defendants' motions, leaving them unopposed.[10]

DISCUSSION

Plaintiff's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court must construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Standards Applicable to Motions Under Rule 12(b)(6)

The movants seek dismissal of the Complaint pursuant to, *inter alia*, Fed. R. Civ. P. 12(b)(6) and the standards for such an application are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly

---

[10] The Court has heard nothing from Plaintiff concerning this action since his last submission herein on December 2, 2022, more than five months ago.

be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

> When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted); *see also*, id. at 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citations and internal quotation marks omitted.)

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester,* No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal* ); *see also, In re Myovant Scis. Ltd. Section 16(b) Litig.*, 513 F. Supp. 3d 365, 373 (S.D.N.Y. 2021) ("The plaintiffs claim that discovery of the relevant disclosure schedule may establish the portion of the purchase price allocated to Movant shares. . . . But "it is only by taking care to require allegations that reach the level suggesting [a plausible claim] that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence." *Twombly*, 550 U.S. at 559, 127 S.Ct. 1955. Because their unsupported speculation does not amount to a reasonable foundation, the plaintiffs cannot avoid dismissal by claiming that discovery will reveal a basis for their claim.").

It is well settled that "Complaints containing "only conclusory, vague, or general allegations that the defendants engaged in a conspiracy fail to state a claim." *Eldars v. State Univ. of New York at Albany*, No. 20-2693, 2021 WL 4699221, at *3 (2d Cir. Oct. 8, 2021) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002)); *see also, Brady v. IGS Realty Co. L.P.*, No. 20-3512, 2021 WL 4302737, at *2 (2d Cir. Sept. 22, 2021) ("Brady's complaint . . . vaguely references a "civil conspiracy" without any facts supporting a meeting of

the minds or alleging discriminatory animus.  His allegations of an effort by a state-court justice and both parties' attorneys to undermine his litigation do not state a claim for relief that is 'plausible on its face.' *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.").

> The Complaint Fails to Plausibly State Any Actionable Claim or
> Wrongdoing by Any Defendant

Liberally construing Plaintiff's Complaint, it appears Plaintiff is attempting to plead a conspiracy to violate his civil rights under 42 U.S.C. § 1985(3).  "[A]n action will lie under § 1985(3) when a plaintiff is injured by a private conspiracy to interfere with his constitutional rights, so long as there is 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Colombrito v. Kelly*, 764 F.2d 122, 130 (2d Cir. 1985) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798 (1971)).  However, Plaintiff fails to state an actionable claim under § 1985(3).

As a preliminary matter, the Court notes that Updegraff is not named as a defendant in Plaintiff's Complaint in this action, though he is named as a defendant in other actions filed by this Plaintiff.  Despite that, and for reasons that are unclear to the Court, Updegraff is listed as a defendant in this action on the Court's electronic docket, and he filed a motion to dismiss in this action, ECF No. 7.  The Complaint clearly does not state any actionable claim against Updegraff. However, under the circumstances just described, rather than adding to the confusion by granting Updegraff's motion, the Court instead denies Updegraff's motion as moot and directs the Clerk of the Court to terminate Updegraff as a party to this action.

As for Michel's motion to dismiss, she asserts, in pertinent part, that, the Complaint fails to plausibly allege any claim against her:

> [T]he Complaint is devoid of any allegations of fact which could give rise to an actionable claim against Defendant Michel. Even in its most favorable light, Plaintiff's Complaint merely alleges that she is the retained attorney for Ward

> Redux, LLC, the bona fide purchasers of his former Lake Avenue property. This claim is patently insufficient to give rise to a cognizable civil action upon which relief could be granted.

ECF No. 6-10 at p. 5.  The Court agrees.  Moreover, to the extent Plaintiff is attempting to assert that Michel somehow participated in the alleged conspiracy against him, the allegations regarding the conspiracy are themselves entirely implausible and frivolous.  Consequently, the Complaint is dismissed as against Michel.

Additionally, for those same reasons, the Court also *sua sponte* dismisses the claims against the remaining non-moving defendants, since, again, the action is clearly frivolous and vexatious.[11]  More specifically, the Complaint alleges that Greisberger, Providence, and Housing Advocacy Service did nothing more than pay rent to the current owner of the property, which fails to state any type of actionable claim.  As for Cassara and Abar, the bald assertion that they participated in the alleged scheme to wrongfully foreclose on Plaintiff's property is entirely implausible.  Indeed, Plaintiff's factual allegations concerning the alleged conspiracy to steal his real estate are so utterly conclusory, speculative, paranoid and implausible as to be "clearly baseless" and "frivolous."[12]  The bald contention that Rieth sabotaged Plaintiff's efforts to salvage his property, and that the other defendants then conspired to cover up Rieth's

---

[11] Federal District Courts do not generally conduct *sua sponte* reviews of actions in which the plaintiff has paid the filing fee. Nevertheless, "[a] district court has inherent authority to dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee. . . . An action is considered "frivolous" when: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Hariprasad v. New York*, 722 F. App'x 102, (Mem)–103 (2d Cir. May 17, 2018) (citations and internal quotation marks omitted).  Moreover, here the Court gave Plaintiff an opportunity to respond to the motions by Michel and Updegraff, and he did not do so.

[12] In the Bankruptcy Court Decision and Order issued by Judge Warren on July 27, 2017, mentioned earlier, Judge Warren observed that Plaintiff's "allegations of a conspiracy against him, while doubtlessly genuine in his eyes, have no basis in fact, and no evidence is offered in support." ECF No. 11-8 at p. 3; *see also, id.* at p. 5 (Referring to Plaintiff having alleged in the Bankruptcy Action "a grand conspiracy orchestrated to cause Mr. Wynn to lose title to his real estate holdings."); *id.* at p. 9 (Noting that Plaintiff had "doubled down on is assertion that the entire case has been a calculated, racially motivated conspiracy to deprive him of title to his real estate holdings.").

wrongdoing, all supposedly because of a shared desire to racially discriminate against Plaintiff, is exactly the type of implausible claim that should be dismissed under the *Twombly* standard. *See, e.g.*, Verified Complaint, filed in 22-CV-6355 CJS, ECF No. 1-2 at ¶ 12 ("[T]he Bankruptcy Docket and the District Court Docket will also tell you what happened in this case. Plaintiff learned fast that this was not about taxes. It was more about racial discrimination and taking away everything you could from this black elderly man."); *see also, id.* at ¶ 16 ("Judge Warren and Judge Larimer made sure they used their authority as a judge to not expose a racist individual."); ¶ 22 ("I felt Judge Larimer and Judge Warren had a lot to do with Plaintiff not getting honest legal representation."); ¶ 23 ("If I had to guess, I would say Judge Warren, William Rieth, George Rieber and Judge Larimer had something to do with John Warner not representing me."); ¶ 25 ("Gerda B. Cassara foreclose[ed] on my property at 3840 Lake Avenue. . . . Only Judge Larimer and Judge Warren could get the Court and City of Rochester and others to falsify their records to go along with a criminal act such as this."); ¶ 28 ("Plaintiff is not surprised that Gerda Cassara would conspire with Judge Warren and Judge Larimer and pull an illegal criminal stunt such as this because even though her mother was a wonderful lady, Gerda Cassara is a racist biased discriminating back-stabbing lady."); ¶ 30 ("The fact remains that even though Judge Warren has signed the Chapter 7 Discharge on November 26, 2019, it was also meant to be a trap for the Plaintiff to force Plaintiff back into bankruptcy . . . . How is Judge Warren being a judge in bankruptcy court conspiring with others to violate the same statutes he swore to uphold? This is like the fox guarding the hen house.").

<u>Leave to Amend is Denied</u>

Plaintiff never responded to Defendants' motions, and therefore he has not requested leave to amend in the event the Court were to grant Defendants' motions. Ordinarily, though, a

court will not dismiss a *pro se* complaint without giving the plaintiff a chance to amend.  Here, however, the Court declines to give Plaintiff an opportunity to amend since it would be futile to do so for the reasons already discussed.  Namely, Plaintiff's allegations are so conclusory, far-fetched, and unreasonable, that no amount of additional pleading would result in an actionable claim. *See, Hariprasad v. New York*, 722 F. App'x 102, 103 (2d Cir. May 17, 2018) ("Ordinarily, the district court should not dismiss a *pro se* plaintiff's complaint without granting leave to amend when a liberal reading of the complaint gives any indication that a valid claim might be stated. But, here, amendment would be futile, as there is no indication that Hariprasad might plead a valid claim[.]"); *see also, Johnson v. United States*, No. 06-CV-4182 (KMK), 2006 WL 1596803, at *1 (S.D.N.Y. June 8, 2006) ("A plaintiff asserting fantastic or delusional claims should not, by payment of a filing fee, obtain a license to consume limited judicial resources and put defendants to effort and expense.  Moreover, where a complaint is frivolous or based on delusional claims, *sua sponte* dismissal cannot reasonably be said to deprive such a plaintiff of the opportunity of clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action.") (citations and internal quotation marks omitted).   According, the dismissal is with prejudice.

### The Request by Michel for a Filing Sanction

Michel further contends that the Court should impose a filing sanction on Plaintiff. *See*, ECF No. 6-10 at p. 5 ("[G]iven Plaintiff's established history of engaging in vexatious litigation, the Court should impose an injunctive order precluding Plaintiff from proceeding with further lawsuits against Defendant Michel without first obtaining leave from the Court.").[13]  The Court

---

[13] *See also, id.* at p. 16 ("A review of Plaintiff's filings reveals Plaintiff has a propensity to include the same defendants over and over again in his frivolous actions, even when they have no nexus to the action before the Court. In turn, one reviewing his current batch of legal filings will see individuals whose last action with Plaintiff

will grant that application since it is clear that Plaintiff is indeed a serial vexatious litigant who will not be deterred by any lesser sanction.[14]

In that regard, the Court notes that it analyzed this same issue in its recent decision dismissing related case number 22-CV-6352 CJS, *Wynn v. Phillips Lytle, et al.*, ECF No. 35, at pp. 15-19. In that Decision and Order, which the Court incorporates herein by reference, the Court ordered Plaintiff to show cause in writing, within thirty days, why the Court should not impose a filing sanction on him, preventing him from filing any additional actions or claims relating to matters raised in that lawsuit, which are the same matters raised in this lawsuit. Plaintiff never responded to that Order, and, consequently, the Court will be entering an order imposing such a filing sanction in that action, and will grant the same relief in this action.

### Michel's Request for Monetary Sanctions

Finally, Michel asks the Court to impose a monetary sanction on Plaintiff, requiring that he "pay for her reasonable attorney's fees in connection with the instant action, as the lawsuit against her is patently frivolous and not made in good faith."[15] In support of her request, Michel accurately and comprehensively sets forth Plaintiff's history of repetitive and vexatious court filings.[16] As for the procedural mechanism by which Michel maintains the Court should make

---

was decades ago. Defendant Michel has no reason to believe that, absent court intervention, Plaintiff will not stop including her in future actions despite having no relevance to the matter before the Court.").

[14] The four actions filed on August 22, 2022, were just the latest salvo by Mr. Wynn, who, since 1992, has filed seventeen civil actions in this Court, along with fifteen bankruptcy-related appeals, many of which involve the same matters as the instant action. These figures are based on a search of the Court's CM/ECF electronic docketing system performed on May 17, 2023. A similar search of the Second Circuit's CM/ECF system indicates that Plaintiff is a party to thirty-two appeals filed since 2014.

[15] ECF No. 6-10 at p. 4.

[16] ECF No. 6-10 at pp. 5-7, 9; *see also, id.* at p. 9 ("All of these filings are collateral attacks on the foreclosure and bankruptcy actions and rely upon the same arguments that have been heard ad nauseam for the last two decades: Plaintiff is a black man who is the subject of a vast and ongoing conspiracy to deprive him of property, a conspiracy that includes his own lawyers, the Monroe County Executive, the Rochester City Mayor, various private business, various private individuals, and multiple State and Federal judges. In submitting the instant round of lawsuits, Plaintiff has effectively named every person whose name has tangentially appeared in his legal case over the last two decades as a defendant, including innocent third parties who legitimately have no nexus to his legal situation, such as Defendant Michel.").

such an award, she asserts that the Court has "discretionary power" to make such an award, citing the Second Circuit's decision in *Colombrito v. Kelly*, cited earlier.  In *Colombrito*, the Second Circuit discussed a district court's "common law authority" to award attorney's fees to a prevailing defendant, stating, in pertinent part:

> We start with the premise that under the American Rule, absent statutory authorization or an established contrary exception, each party bears its own attorney's fees. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The only pertinent exception for present purposes is the court's inherent authority to award fees when a party litigates frivolously or in bad faith. *See id.* at 258–59, 95 S.Ct. at 1622–23; *Gerena-Valentin v. Koch*, 739 F.2d 755, 761 (2d Cir.1984); *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 898 (2d Cir.), cert. denied, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). The bad faith exception permits an award upon a showing that the claim is "entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977). Neither meritlessness alone, *see Gerena-Valentin v. Koch, supra*, 739 F.2d at 761; *PRC Harris, Inc. v. Boeing Co., supra*, 700 F.2d at 898, nor improper motives alone, *see Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980), will suffice.

*Colombrito v. Kelly*, 764 F.2d at 133.

Significantly, this "bad faith exception" allows for an award of attorney's fees against even a *pro se* plaintiff. *See, Sassower v. Field*, 973 F.2d 75, 80–81 (2d Cir. 1992) ("The Supreme Court has made clear that a district court has inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons.") (affirming award of attorney's fees against *pro se* plaintiffs pursuant to the district court's inherent authority); *see also, Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 104 (2d Cir. 2006) (Describing *Sassower v. Field* as "holding that district court may, pursuant to its inherent authority, impose attorney's fees on unsuccessful *pro se* litigant if litigant acts in bad faith, vexatiously, wantonly, or for oppressive reasons.").

Here, the Court finds it to be a close call whether to award fees against Plaintiff.  In that regard, as already discussed at length, Plaintiff's claims against Michel, and in general, are definitely "without color." Additionally, the Court is concerned about what Michel refers to as a veiled threat against her by Plaintiff.[17]  The question in the Court's mind, however, is whether Plaintiff acted with the requisite bad faith, meaning whether he acted "wantonly, for purposes of harassment or delay, or for other improper reasons."  The Court has never met the Plaintiff. However, Bankruptcy Judge Warren is apparently quite familiar with Plaintiff, and the Court finds his description of Plaintiff instructive.  More specifically, as set forth earlier, Judge Warren, who indicated that he had "had numerous opportunities to assess Mr. Wynn's cognitive skills and his overall ability to understand the bankruptcy process," described Plaintiff's belief in the alleged "racially motivated conspiracy" as being both "delusional" and "so firmly held" that it was unlikely to ever change. *See*, ECF No. 23-9 at pp. 15-16.  ("He has . . . persisted in his claim that he is the target of a racially motivated conspiracy, designed to deprive him of his real estate.  That view – which appears to the Court to be delusional—likely caused the withdrawal of two experienced attorneys who attempted to represent Mr. Wynn in this case. . . . Mr. Wynn's beliefs are so firmly held, but lacking in a foundation rooted in reality, that it is highly unlikely he could ever change his focus and move this case forward.").  The Court credits Judge Warren's assessment, and consequently finds that it would not be appropriate at this time to require

---

[17] *See*, ECF No. 6-10 at pp. 14-15 ("Plaintiff's application has transcended civil discourse and debate and entered into a realm of veiled threats of violence if he does not get what he demands. In Plaintiff's Complaint, he asserts that Defendant Michel and her client non-party "Mark Updegraff AKA Ward Redux LLC must have plenty of nerves and no brains." (Plaintiff's Complaint at ¶ 28). In explaining what he means by this, Plaintiff states that "people have gotten hurt for doing less to a person." (id.). In other words, Plaintiff is implying that he would be justified in inflicting violence on Defendant Michel and her legal client, as individuals have "gotten hurt for doing less." Making this veiled threat even more troubling is the fact Plaintiff immediately begins the next paragraph by referencing a firearm. (Plaintiff's Complaint at ¶ 29).  The Court has not seen the document to which Michel refers, as it apparently was never docketed in this action.  The only Complaint filed in this action does not have a ¶ 29. See, ECF No. 1.

Plaintiff to pay Michel's attorney fees.[18]   Consequently, Michel's application for attorneys' fees is denied.

<u>The Remaining Counterclaim by Greisberger and Providence</u>

The only remaining claim is the counterclaim by Greisberger and Providence, designated as a claim for ""Frivolous Claim."  Regarding such claim, the Court notes that while it agrees Plaintiff's claim against Greisberger and Providence is frivolous, the Court has already indicated that it is not inclined to impose monetary sanctions against Plaintiff.  Nevertheless, the Court is also disinclined to dismiss the counterclaim without first giving Greisberger notice and an opportunity to be heard.  Accordingly, the Court will direct that Greisberger and Providence notify the Court in writing, within fourteen days, whether it intends to pursue this counterclaim.

CONCLUSION

For the reasons discussed above, Updegraff's motion to dismiss (ECF No. 7) is denied as moot, and the Clerk is directed to terminate Updegraff as a party to this action.  The Clerk of the Court is further directed to amend the docket to reflect the correct spelling of Michel's name. (The docket presently incorrectly lists her as Susan J. Michael).

Michel's motion to dismiss (ECF No. 6) is denied as to her request for attorneys' fees but is otherwise granted, and all claims against her are dismissed with prejudice.  All claims against the remaining defendants are likewise dismissed with prejudice, *sua sponte*, as the Complaint clearly fails to state an actionable claim against any Defendant, including any non-moving defendant, and is frivolous and vexatious.

---

[18] *See, e.g., Lawrence v. City of New York*, No. 15CV8947, 2018 WL 3611963, at *7 (S.D.N.Y. July 27, 2018) ("Courts consider mental illness as a factor in determining sanctions.") (citation omitted).

Additionally, the Court grants Michel's application for a filing injunction against the Plaintiff. Specifically, James I. Wynn, Sr., is hereby barred and enjoined from filing any additional actions or asserting any new claims in already pending actions relating to the subject matter of this action, without first obtaining written approval from the undersigned. Specifically, such filing sanction applies to <u>any</u> action or claim relating to 3840 Lake Avenue, Rochester, New York. This includes, without limitation, any action or claim relating to the foreclosures of Plaintiff's ownership interest in such property, or to Plaintiff's continuing claim of ownership in such property, or to any related bankruptcy proceedings. The Clerk of the Court is directed to notify the undersigned if Plaintiff attempts to file such an action or claim.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order by Plaintiff would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438 (1962).

**Finally, within fourteen (14) days of the date of this Decision and Order, Greisberger and Providence are ordered to either voluntarily discontinue their counterclaim or show cause in writing why the counterclaim should not be dismissed as moot. In the event that Greisberger and Providence fail to respond within fourteen days, the Court will dismiss the counterclaim as moot.**

SO ORDERED.

DATED:     May 2 3, 2023
           Rochester, New York

CHARLES J. SIRAGUSA
United States District Judge